UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| ASHLEY FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-cv-00050-GFVT-CJS |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| FRANKLIN COUNTY, KENTUCKY, *et* | ) | **ORDER** |
| *al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on cross motions for summary judgment filed by Plaintiff
Ashley Franklin and Defendants Franklin County, Rick Rogers, and Wes Culbertson.  [R. 54; R.
57.]  When transporting her to Franklin County Regional Jail, former jail sergeant Brandon Price
had sexual contact with then-inmate Ashley Franklin.  Ms. Franklin brought this action against
Franklin County, Brandon Price, and jail staff Rick Rogers and Wes Culbertson, alleging
constitutional violations, battery, and negligence.  [R. 1.]  Ms. Franklin now moves for partial
summary judgment for her claims against Mr. Price, while Franklin County, Mr. Rogers, and
Captain Culbertson move for summary judgment for Ms. Franklin's claims against them.  [R. 54;
R. 57.]  For the following reasons, the Defendants' motion for summary judgment is
**GRANTED** and the Plaintiff's motion for summary judgment is **GRANTED** in part and
**DENIED** in part.

**I**

In January 2019, Ms. Franklin was an inmate at Franklin County Regional Jail.  [R. 57-2
at 7.]  One evening, Ms. Franklin became lightheaded and dizzy from issues with her blood

pressure.  [R. 53-1 at 27.]  Brandon Price, then a jail sergeant, confirmed that Ms. Franklin had elevated blood pressure.  [R. 57-2 at 10.]  Mr. Price then drove Ms. Franklin to the emergency room for treatment in a van.  [R. 64-1 at 5.]

Mr. Price alone took Ms. Franklin to the hospital.  During the transport, Mr. Price wore a normal jail uniform with a duty belt that held pepper spray, handcuffs and a handgun holster.  [R. 53-2 at 80.]  Jail policy also required Mr. Price to carry a firearm when transporting an inmate. *Id.* at 89.  After the hospital discharged Ms. Franklin, Ms. Price put handcuffs and shackles on her and placed a belt around her waist that attached to the handcuffs and shackles.  [R. 64-1 at 15-16.]  He then escorted her to the van and placed her in the back.  *Id.*  At that time, Mr. Culbertson, a Captain at the jail, approached Mr. Price in the parking lot of the hospital.  [R. 64-1 at 8-9.]  Mr. Price and Captain Culbertson had a brief conversation, then Captain Culbertson left. *Id.* at 10.

Mr. Price then left the hospital with Ms. Franklin in the back.  At some point on the way back to the jail, Mr. Price pulled into a parking lot and stopped the van.  [R. 53-2 at 66.]  Mr. Price climbed in the back of the van and exposed himself without taking his pants off completely.  [R. 53-2 at 124-25.]  Ms. Franklin then performed a sexual act on Mr. Price, although the parties contest the nature of the act.  Ms. Franklin alleges that she performed oral sex on Mr. Price, while he alleges that Ms. Franklin masturbated him with her hands.  [R. 64-1 at 72-73; R. 64-2 at 10.]

The next day, Ms. Franklin's cellmate told jail staff that Ms. Franklin had sexual contact with Mr. Price.  [R. 54-2 at 1.]  Jail staff then interviewed Ms. Franklin's cellmate, Ms. Franklin, and Mr. Price.  *Id.* at 1-2.  Ms. Franklin and Mr. Price both denied having sexual interaction at first, but jail staff decided to conduct second interviews after reviewing camera footage and

driving the route between the hospital and the jail. *Id.* Mr. Price and Ms. Franklin then admitted to having sexual contact during their second interviews. *Id.* at 3. After Mr. Price's admission, the jail terminated his employment for the sexual encounter with Ms. Franklin. [R. 54-12.] Rick Rogers, the Franklin County jailer at the time, reported the incident to Frankfort police and requested that a detective take over the investigation. [R. 65-2 at 52-53.] Mr. Price was later convicted of sexual abuse. [R. 54-7.]

Ms. Franklin brought this action against Mr. Rogers, Mr. Price, Captain Culbertson, and Franklin County. [R. 1.] She now moves for summary judgment against Mr. Price on Counts One and Three for violating her constitutional rights and battery. [R. 54.] Defendants Mr. Rogers, Captain Culbertson, and Franklin County also move for summary judgment on all claims against them. [R. 57.] Mr. Price did not file a motion for summary judgment.

## II

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). A genuine issue as to a material fact exists, and thus summary judgment is improper, if the evidence shows that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-

3

moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Chao*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact." *Id*. (internal citations omitted). In other words, a "scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). When reviewing cross-motions for summary judgment, "the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). However, self-serving, conclusory statements from the non-moving party are not probative. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 584 (6th Cir. 1992).

Moreover, the court cannot satisfy the burden for a party. It would be "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992).

## A

In her complaint, Ms. Franklin alleges that the Defendants violated her Eighth Amendment right to be free from cruel and unusual punishment.[1] *See* U.S. Const. amend. VIII.

---

[1] Ms. Franklin originally pleaded a claim under 42 U.S.C. § 1983 against Mr. Rogers. But she now "no longer intends to pursue that claim and therefore abandons it." [R. 66 at 31 n.223.]

42 U.S.C. § 1983 provides a cause of action against public officials who violate a person's federal rights while acting under the color of state law.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The parties do not dispute that the Defendants acted under color of law, so the inquiry focuses on whether there was a deprivation of Ms. Franklin's Eighth Amendment right. Ms. Franklin alleges that Captain Culbertson and Mr. Price's deliberate indifference to a high risk of harm violated her constitutional rights.  [R. 1 at 6-7.]  Against Franklin County, Ms. Franklin alleges that its policy of inaction violated her constitutional rights.  *Id.* at 7-8.

**1**

Ms. Franklin alleges that Captain Culbertson and Mr. Price violated her Eighth Amendment right by subjecting her to a strong likelihood of serious harm through their deliberate indifference.  Because the action is against Captain Culbertson and Mr. Price in their individual capacities, the Court must determine whether they are entitled to qualified immunity.

Under federal law, qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In other words, this doctrine requires the Court to apply a two-step analysis: First, the court considers whether the facts alleged show the officer's conduct violated a constitutional right.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the court asks whether the right at issue was clearly established.  *Id.*

If the answer to either question is "no," the defendant is immune from suit.  *Id.* at 236. The plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity, though the Court still construes facts and reasonable inferences in a light most favorable to the nonmovant.  *See Scott v. Harris*, 550 U.S. 372, 377 (2007).  Qualified immunity

doctrine recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct," and thus it shields "all but the plainly incompetent or those who knowingly violate the law" from suit. *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (internal quotations omitted).

Ms. Franklin argues that Price and Culbertson violated her Eighth Amendment right through deliberate indifference. To prevail on a deliberate indifference claim, a plaintiff must show that the defendant acted with deliberate indifference to a substantial risk of serious harm to the plaintiff and that the defendant disregarded the risk by failing to take reasonable protective measures. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A constitutional claim for deliberate indifference requires a plaintiff to prove an objective and a subjective component. *See Hale v. Boyle Cty.*, 18 F.4th 845, 852 (6th Cir. 2021).

The objective component requires a plaintiff to show that "absent reasonable precautions, an inmate is exposed to a substantial risk of serious harm," or that the pain actually inflicted be "sufficiently serious." *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 361 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 836); *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1094 (6th Cir. 2019). On the other hand, the subjective component requires that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To establish the sufficiently culpable state of mind based on a failure to protect an inmate, a plaintiff must show that the prison official acted with deliberate indifference. *See, e.g.*, *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011). In other cases, like when a prisoner alleges excessive force, the subjective component requires that the prison official acted "maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

6

Because the facts alleged show that Captain Culbertson did not act with a sufficiently culpable state of mind, he did not violate a clearly established right.  Thus, the Defendants are entitled to summary judgment on the § 1983 claim against Captain Culbertson.  *See Saucier*, 533 U.S. at 201.  But because Mr. Price violated Ms. Franklin's clearly established right under either subjective test—deliberate indifference or malicious and sadistic—Ms. Franklin is entitled to judgment on her § 1983 claim against Mr. Price.

**a**

Ms. Franklin alleges that Captain Culbertson violated her Eighth Amendment right based on a failure to protect.  [R. 57 at 15; R. 66 at 25.]  Thus, the subjective component requires that Captain Culbertson acted with deliberate indifference.  *See Bishop*, 636 F.3d at 766.  The Defendants argue that they are entitled to summary judgment because Captain Culbertson did not act with deliberate indifference and was not personally involved.  [R. 57 at 10-15.]

Under the deliberate indifference standard, the plaintiff must "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  However, a defendant who was "unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." *Bishop*, 636 F.3d at 767; *see also Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 85 (6th Cir. 1995) ("Simply failing to alleviate a significant risk that he should have perceived but did not is insufficient to ground liability.").  Indeed, the official's state of mind must show "deliberateness tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994).

Additionally, Ms. Franklin must show that Captain Culbertson was personally involved. For individual liability to attach on a failure-to-train or supervise theory, the plaintiff must show that the defendant supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). At a minimum, a plaintiff must demonstrate that the prison official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* This requires personal involvement more than a mere right to control employees. *See Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors."); *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (holding that liability could not attach because "she has merely claimed that the appellants were aware of alleged harassment, but did not take appropriate action").

Ms. Franklin alleges that Captain Culbertson perceived facts from which he could infer a substantial risk to Ms. Franklin, he in fact drew that inference, and he disregarded that risk. [R. 66 at 26.] She contends that three facts establish this deliberate indifference: (1) "she was an incarcerated woman being transported alone by a male guard," (2) Captain Culbertson knew "that Franklin was having medical issues," and (3) he knew that Mr. Price did not comply with the jail's policy of reporting a vehicle's mileage when transporting inmates. *Id.*

Simply put, Ms. Franklin asks the Court to find that Captain Culbertson could have acted with deliberate indifference because he allowed a male guard to transport a female inmate to the emergency room and the guard did not report the mileage. *Id.* Even when taken as true, these facts fall far from deliberate indifference. Ms. Franklin does not allege any facts suggesting that Captain Culbertson knew Mr. Price posed a particular risk to inmates. In fact, Mr. Price

underwent a background check that showed no criminal record.  [R. 57-8 at 26, 28-30.] *Cf.*
*Richko v. Wayne Cnty.*, 819 F.3d 907, 918 (6th Cir. 2016) (holding that a jury could find a social
worker acted with deliberate indifference where information showed a detainee had serious
mental health concerns and had been arrested the day before for an attempted assault with a
dangerous weapon).  And "merely placing a female inmate in the custody of a single male guard
does not amount to a constitutional violation," even where the placement violated jail policy.
*See Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998); *Hovater v. Robinson*, 1 F.3d
1063, 1068 (10th Cir. 1993) ("To find a harm present in these circumstances would, in effect,
require the conclusion that every male guard is a risk to the bodily integrity of a female inmate
whenever the two are left alone.").

Yet even if a jury could find that Captain Culbertson acted with deliberate indifference,
he cannot be held individually liable because he did not "encourage[] the specific incident of
misconduct or in some other way directly participate[] in it."  *Shehee*, 199 F.3d at 300.  In her
complaint, Ms. Franklin plainly alleges that Captain Culbertson "personally and directly
participated in Franklin's mistreatment."  [R. 1 at 3.]  But, like the plaintiff in *Poe*, Ms. Franklin
offers only that Captain Culbertson should have acted and did not.  853 F.2d at 429; [R. 66 at 26
("Instead, he did nothing. He didn't see or talk to Franklin, take over or join the transport back to
the Jail, or even ensure that Price returned to the Jail.").]  Ms. Franklin was required to point to
some action by Captain Culbertson that contributed to her injury; there is no such showing here.
*See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013) (holding summary
judgment was appropriate where the plaintiff alleged only that the supervisor inadequately
trained and supervised "despite knowing that sexual assaults on inmates were occurring in other
jurisdictions").  Thus, even if a jury could find that he acted with deliberate indifference, Captain

9

Culbertson did not "at least implicitly authorize[], approve[], or knowingly acquiesce[]" to Mr. Price's conduct such that he could be held individually liable. *Shehee*, 199 F.3d at 300.

Therefore, the Defendants are entitled to summary judgment on Ms. Franklin's § 1983 claim against Captain Culbertson because he did not act with deliberate indifference. *See Bishop*, 636 F.3d at 766. And even if he did, Mr. Culbertson cannot be held individually liable because he was not personally involved in Ms. Franklin's abuse. *See Shehee*, 199 F.3d at 300.

**b**

Ms. Franklin argues that she is entitled to summary judgment on her § 1983 claim against Mr. Price. In *Rafferty*, the Sixth Circuit held that "sexual abuse of inmates" is generally "sufficiently serious" to satisfy the objective component of an Eighth Amendment claim. 915 F.3d at 1094. Mr. Price does not dispute that if Ms. Franklin did not consent to the sexual contact, his actions are sufficiently serious as to satisfy the objective component. Nor does he contest that he had a "sufficiently culpable state of mind" under either the malicious or the deliberate indifference standards to satisfy the Eighth Amendment's subjective test if the sexual contact was not consensual. *Farmer*, 511 U.S. at 834. Rather, Mr. Price argues only that he did not violate the Eighth Amendment because Ms. Franklin consented to the sexual conduct. [R. 64.]

As Mr. Price acknowledges, "inmates are generally regarded as unable to consent to sexual relations with prison staff." *Rafferty*, 915 F.3d at 1094. This is because the power dynamics between prisoners and guards make it difficult to discern consent from coercion. *See Wood v. Beauclair*, 692 F.3d 1041, 1047 (9th Cir. 2012) ("Prisoners have no control over most aspects of their daily lives. . . . They depend on prison employees for basic necessities, contact with their children, health care, and protection from other inmates.").

10

Recognizing the power disparity between prisoners and guards, the Sixth Circuit applies a rebuttable-presumption framework in cases involving sexual conduct between prison officials and those incarcerated.  Under this framework, a court presumes that "the conduct was not consensual."  *See Hale*, 18 F.4th at 854 (quoting *Wood*, 692 F.3d at 1049).  Because the court presumes non-consent, "the defendant must affirmatively show that the incarcerated person consented."  *Id.*  A defendant shows that the incarcerated person consented by establishing that the conduct "involved no coercive factors."  *Id.*  In *Harker v. Zigler*, for example, the defendant overcame the presumption of non-consent by providing testimony and phone recordings showing that the defendant never used force and that she and the plaintiff had an ongoing, romantic relationship.  No. 13-cv-1305 TLN CKD, 2016 U.S. Dist. LEXIS 25457, at *12-19 (E.D. Cal. Feb. 29, 2016).

Here, Mr. Price fails to rebut the presumption that Ms. Franklin did not consent to the conduct.  Rather than "affirmatively show" that Ms. Franklin consented, Mr. Price merely denies coercive factors that Ms. Franklin advances.  *Hale*, 18 F.4th at 854; [*see* R. 64 at 7.]  In response to Ms. Franklin's allegation that the sexual contact was not consensual, Mr. Price stated that, "I just remember it was willing."  [R. 64-1 at 23.]  Where Ms. Franklin testified that Mr. Price offered her tobacco and food during the drive, Mr. Price stated only that he did not recall offering her anything.[2]  Lastly, when responding to Ms. Franklin's contention that Mr. Price

---

[2] Mr. Price's deposition transcript reflects the following exchange:
```
Q:    You're sure that you did not [offer Ms. Franklin cigarettes]?
A:    I don't recall offering her any.
Q:    Did you offer her Taco Bell.
A:    No.  I don't recall that at all.
Q:    Do you recall offering to get her food of any kind?
A:    No.
Q:    Do you recall giving her dip or smokeless tobacco?
A:    No.
```
[R. 64-1 at 19-20.]

offered to help her with a parole determination in exchange for the sexual act, Mr. Price's answer

to the question was similarly unenlightening: "No." *Id.* at 7. Mr. Price provides no affirmative

evidence that Ms. Franklin consented to the sexual conduct. He therefore fails to rebut the

presumption that the sexual conduct was not consensual. *See Hale*, 18 F.4th at 854; *see also*

*Webb v. Chase Manhattan Mortg. Corp.*, No. 2:05-cv-0548, 2008 U.S. Dist. LEXIS 42559, at

*51 (S.D. Ohio May 28, 2008) (holding that the plaintiff's "bald denial" that he received mail

was insufficient to rebut a presumption of receipt on summary judgment).

Moreover, even when reviewing the facts in a light most favorable to Mr. Price, the

sexual conduct involved coercive factors because the conduct occurred in the back of a jail van

where Ms. Franklin was restrained and Mr. Price carried a firearm. Mr. Price argues that

whether he carried a firearm during the sexual contact and whether Ms. Franklin remained

restrained are genuinely disputed. [R. 64 at 3.] However, Mr. Price does no more than "show

there is some metaphysical doubt as to the material fact." *Chao*, 285 F.3d at 424.

First, Ms. Franklin claims in her motion that Mr. Price was carrying a firearm, Captain

Culbertson testified that Mr. Price was carrying a firearm, and Mr. Price testified that jail policy

required him to carry a firearm when transporting inmates. [R. 53-2 at 89; R. 53-3 at 77; 54-1 at

10.] Mr. Price argues that whether he carried a firearm is disputed because he invoked the Fifth

Amendment when asked. [R. 64 at 3; R. 64-1 at 21.] But invoking the Fifth Amendment does

not make a fact relating to the question genuinely disputed; on the contrary, invoking the

privilege may even give rise to a legitimate inference that the person engaged in criminal

activity. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not

forbid adverse inferences against parties to civil actions when they refuse to testify in response to

probative evidence offered against them.").

Second, Mr. Price put handcuffs and shackles on Ms. Franklin before placing her in the van. [see R. 64-1 at 15.] Ms. Franklin testified that her hands remained handcuffed and her legs shackled throughout the sexual contact. [R. 64-2 at 9.] Mr. Price testified that he removed her handcuffs before the sexual conduct. [R. 64-1 at 22.] When asked whether he took Ms. Franklin's shackles off, he once replied, "Not that I can recall," though another time responded that Ms. Franklin was not shackled during the sexual conduct. *Id.*; [R. 53-2 at 67.] Moreover, in a plea agreement, Mr. Price agreed that he "had [Ms. Franklin] touch [his] penis" with Ms. Franklin "still hand cuffed and shackled." [R. 54-7 at 1.] Mr. Price's plain and contradictory assertion that he removed her restraints thus raises only a metaphysical doubt as to the fact, insufficient to raise a genuine dispute that Ms. Franklin remained handcuffed and shackled. *See Chao*, 285 F.3d at 424.

Citing the Second Circuit, Mr. Price argues that the Court cannot pick a side and determine which version of events it finds most credible. [R. 64 at 7 (citing *Randolph v. Griffin*, 816 F. App'x. 520, 524 (2d Cir. 2020)).] He is correct. In fact, the Court must read facts and make inferences in a light most favorable to him. *See Wiley*, 20 F.3d at 224. But here the law places the burden on Mr. Price to show that the conduct involved no coercive factors. *See Hale*, 18 F.4th at 854. He has made no such affirmative showing. *See id.* Yet even without the presumption, a reading of the facts in a light most favorable to Mr. Price shows that coercive factors were present because the facts show that the sexual conduct occurred in the back of a van with Ms. Franklin restrained and while Mr. Price carried a firearm.

Because Mr. Price fails to rebut the presumption that the conduct was not consensual, Ms. Franklin established that the sexual conduct was sufficiently serious to constitute an Eighth Amendment violation and that Mr. Price acted with a sufficiently culpable state of mind.

13

Accordingly, Ms. Franklin is entitled to summary judgment on her § 1983 claim against Mr. Price.

2

Ms. Franklin also alleges that Franklin County violated her Eighth Amendment rights under a theory of *Monell* liability. [3]  [R. 1 at 7-8.]  Generally, a local government may not be sued under § 1983 based on the actions of its employees or agents.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The exception to that general rule, known as *Monell* liability, provides that a local government may be held liable where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.*

A court analyzes two issues in a § 1983 action against a municipality: whether a constitutional violation caused the plaintiff's harm and, if so, whether the municipality is responsible for the violation.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992).  A sexual assault of an inmate by a guard constitutes a violation of the inmate's constitutional rights.  *See Rafferty*, 915 F.3d at 1094.  Thus, the claim turns on whether Franklin County is liable for the violation.  Ms. Franklin alleges that Franklin County is liable for the violation because it maintained a policy of inaction for preventing and responding to sexual misconduct. [R. 66 at 16-17.]

---

[3] Ms. Franklin also alleges a *Monell* claim against Mr. Rogers in his individual capacity.  [R. 3, 7-8 ("[Mr. Rogers] is sued in his individual capacity.")]  But a *Monell* claim must be against a municipality for governmental conduct, not an individual.  *See, e.g.*, *Jackson v. Cuyahoga Cty.*, No. 1:20-cv-02649, 2021 U.S. Dist. LEXIS 95767, at *12-13 (N.D. Ohio May 20, 2021) (dismissing a *Monell* claim because it is "one brought against a municipality or other local governmental agency—not an individual—for a governmental custom, policy, or practice that results in alleged constitutional injury").  Thus, to the extent that Ms. Franklin's *Monell* claim is against Mr. Rogers in his individual capacity, summary judgment for the Defendants is proper.  And to the extent that the claim may be construed as against Mr. Rogers in his official capacity, "such an action is against the county itself" and the claim is dismissed as duplicative of Ms. Franklin's *Monell* claim against Franklin County.  *Graham*, 473 U.S. at 166.

14

To state a claim under an inaction theory, a plaintiff must establish four elements: (1) the existence of a clear and persistent pattern of unconstitutional conduct; (2) notice or constructive notice on part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's policy or custom was the "moving force" or direct causal link in the constitutional deprivation. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

Ms. Franklin fails to establish that the execution of policy or custom caused her abuse such that the County is itself responsible. *See Monell*, 436 U.S. at 694. Ms. Franklin's claim fails because she cannot show the existence of a clear and persistent pattern of unconstitutional conduct or that Franklin County maintained a policy of inaction regarding the risk of sexual abuse. *See Claiborne Cnty.*, 103 F.3d at 508.

First, the Defendants are entitled to summary judgment on Ms. Franklin's *Monell* claim because she cannot show "the existence of a clear and persistent pattern of unconstitutional conduct." *See id.* Ms. Franklin points to three instances of previous sexual misconduct. [R. 66 at 8-10.] In 2017, Jail Sergeant Harrod passed notes with sexual content to an inmate. [R. 66-4 at 21.] During the ensuing investigation, one inmate interviewed said that she was touched inappropriately, and another inmate said that she was approached for a sexual relationship. *Id.* at 23. He resigned before he could be fired. *Id.* at 26. Later that year, another jail sergeant was suspended for sending sexually explicit text messages to a deputy jailer. [R. 66-6.] Lastly, the chief deputy jailer resigned in 2018 after three female officers alleged that he sexually harassed them. [R. 66-6.]

These instances do not constitute a "clear and persistent pattern of unconstitutional

conduct." *See Claiborne Cnty.*, 103 F.3d at 508.  None of the instances involve sexual abuse of

an inmate during transportation.  Though "no caselaw within our circuit requires the production

of evidence of almost identical conduct," only one instance involves sexual activity between an

inmate and jail staff.  *Simpkins v. Boyd Cnty. Fiscal Ct.*, 48 F.4th 440, 457 (6th Cir. 2022).  At

best, the instances that Ms. Franklin cites amount to "isolated incidents as opposed to ongoing

issues."  *Doe v. Springfield-Clark Career Tech. Ctr.*, No. 3:14-cv-00046, 2015 U.S. Dist. LEXIS

132898, at *59 (S.D. Ohio Sep. 30, 2015) (finding no clear pattern where several complaints of

sexual abuse by school employees); *see also Thomas v. City of Chattanooga*, 398 F.3d 426, 429-

30 (6th Cir. 2005) (finding no clear pattern where plaintiffs submitted affidavits establishing that

forty-five excessive-force suits had been filed against the city in the prior eight years).

Second, Ms. Franklin cannot show Franklin County's approval of the unconstitutional

conduct, such that their deliberate indifference in their failure to act can be said to amount to an

official policy of inaction.  *See Claiborne Cnty.*, 103 F.3d at 508.  The evidence must show that

the need to act is so obvious that the County's conscious decision not to act amounts to a policy

of deliberate indifference.  *Id.*  A plaintiff must demonstrate more than just "a collection of

sloppy, or even reckless, oversights."  *Id.*  Rather, the record must show that the County

"consciously never acted when confronted with its employees' egregious and obviously

unconstitutional conduct."  *Id.*  In the end, a custom for purposes of *Monell* liability must "be so

permanent and well settled as to constitute a custom or usage with the force of law."  *Monell*,

436 U.S. at 691 (internal quotation marks and citation omitted).

Ms. Franklin does not show that Franklin County, as a policymaking body, had a custom

that reflected a deliberate, intentional indifference to the sexual abuse of its inmates.  In fact, the

jail maintains an explicit zero-tolerance policy for sexual relations between staff and inmates and

16

informs inmates that it is a crime for jail staff to subject an inmate to sexual contact. [R. 57-4 at 3-4 ("[I]t is the Policy of the Franklin County Regional Jail to ensure that sexual activity between staff and inmates . . . regardless of consensual states, is strictly prohibited. . . . Any sexual contact consensual or nonconsensual is a violation of KRS 510.120(1c) and you will be prosecuted."); R. 57-11.] In the only known previous incident of sexual relations between staff and an inmate, the jail conducted an investigation and the staff person's employment was terminated. [*See* R. 66-4.] Further, Ms. Franklin testified that Mr. Price acknowledged that he knew he would be fired if Ms. Franklin told anyone about the sexual contact. [R. 57-2 at 17.] Ms. Franklin attempts to "infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple respondeat superior standard." *Thomas*, 398 F.3d at 432-33.

Ms. Franklin contends that Franklin County should have implemented better transportation and staffing policies. [R. 66 at 23-24.] But policies the jail could have followed do not "dictate the contours of her 1983 claim." *See Hale*, 18 F.4th at 853 n.5. The proper focus is "what the policy actually was." *Balbridge v. Jeffreys*, No. 07-CV-15130-DT, 2009 U.S. Dist. LEXIS 8454, at *16 (E.D. Mich. Feb. 5, 2009). When looking at Franklin County's actual conduct, Ms. Franklin has not established the existence of a clear and persistent pattern of unconstitutional conduct or the County's tacit approval of the unconstitutional conduct. Thus, Franklin County is entitled to summary judgment on Ms. Franklin's *Monell* claim.

**B**

The Defendants also argue that Mr. Rogers and Captain Culbertson are entitled to summary judgment on Ms. Franklin's negligence claim. [R. 57-1 at 22.] Ms. Franklin alleges

17

that Mr. Rogers and Captain Culbertson are liable for negligence because they failed to enforce provisions of the Prison Rape Elimination Act and Franklin County Regional Jail transportation policies.  [R. 66 at 29.]  However, no reasonable jury could find Mr. Rogers or Captain Culbertson liable for negligence because a claim under PREA is barred by qualified immunity and Ms. Franklin has not established she is entitled to relief for a breach of transportation policies.

1

Under Kentucky law, qualified immunity protects public officers sued in their individual capacities from "damages liability for good faith judgment calls made in a legally uncertain environment."  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).  Qualified immunity applies to claims against officers in their individual capacity if they were (1) performing a discretionary function, (2) in good faith, and (3) within the scope of their authority.  *Id.*  Immunity is not available for the "negligent performance of a ministerial act, i.e., one that requires only obedience to the orders others."  *Id.*  The Defendants argue that Mr. Rogers and Captain Culbertson are entitled to qualified immunity on Ms. Franklin's negligence claim because they were performing a discretionary function.  [R. 57-1 at 22-23.]

Duties are discretionary when they "necessarily require the exercise of reason in the adaptation of means to an end," including how or whether an act should be done.  *Collins v. Commonwealth Nat. Res. & Envtl. Prot. Cabinet*, 10 S.W.3d 122 (Ky. 1999).  Discretion in how an act should be done arises when the act may be "performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed."  *Id.*  Yet courts will not find that a duty is ministerial unless "there is an absolute, certain, and imperative obligation."  *Ritchie v. Turner*,

18

559 S.W.3d 822, 841 (Ky. 2018) (distinguishing between "specific and affirmative" ministerial commands from "broadly defined and not mandatory" discretionary duties).

Ms. Franklin alleges that the Defendants are liable for negligence because they failed to enforce "PREA rules through training and supervision." [R. 66 at 29.] She also plainly alleges that they "had a ministerial duty to enforce PREA's requirements." *Id.* However, as the Defendants point out, PREA is not mandatory and does not create a private cause of action. [R. 80 at 14;] *see* 34 U.S.C. §§ 30301-30309; *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 U.S. Dist. LEXIS 114727, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014). Rather, PREA was enacted to study the problem of rape in prisons and provide funding and expertise to address it. *See Pirtle v. Hickman*, 2005 U.S. Dist. LEXIS 40419, at *3 (D. Idaho 2005).

Ms. Franklin does not specify the PREA requirements that she alleges Mr. Rogers and Captain Culbertson violated. [R. 66 at 28-29.] However, compliance with PREA is not mandatory. Therefore, there was no "absolute, certain, and imperative obligation" to comply with PREA, Captain Culbertson and Mr. Roger's alleged violations of PREA's requirements are not ministerial, and they are entitled to qualified immunity. *See Ritchie*, 559 S.W.3d at 841.

**2**

Ms. Franklin also alleges negligence because Mr. Rogers and Captain Culbertson failed to enforce jail rules. [R. 66 at 29.] However, the Defendants are entitled to summary judgment because Ms. Franklin cannot establish either negligence per se or the requirements for a general negligence claim.

To prevail on a negligence claim, a plaintiff must prove "(1) a duty of care owed by the defendant, (2) conduct constituting a breach of that duty, (3) resultant injury and (4) causation between the breach and the injury." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436-37 (Ky. Ct. App.

19

2001).  In the correctional setting, Kentucky law "imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 478 (Ky. 2006) (quoting *Lamb v. Clark*, 282 Ky. 167, 138 S.W.2d 350, 352 (Ky. 1940)).

Under negligence per se, the violation of a statute or ordinance can constitute a per se breach of duty.  *See Flechsig v. United States*, 991 F.2d 300, 304 (6th Cir. 1993).  But not all violations of rules constitute negligence per se.  The violation of internal policies or regulations cannot form the basis of a negligence per se claim.  *See id.* ([I]nternal operating procedures [are] . . . insufficient to create per se liability whenever [they are] not followed. To hold otherwise would be to create a disincentive . . . to have written procedures."); *Finn v. Warren Cnty.*, No. 1:10-CV-00016-M, 2013 U.S. Dist. LEXIS 100238, at *51 (W.D. Ky. July 17, 2013) ("[T]his violation of the jail's internal policy does not constitute negligence per se.").

Ms. Franklin alleges that Mr. Rogers and Captain Culbertson were negligent because they "failed to enforce Jail rules."  [R. 66 at 29.]  In doing so, Ms. Franklin appears to primarily make a negligence per se argument.  However, Franklin County Regional Jail internal policies cannot form the basis of a negligence per se claim.  *See Flechsig*, 991 F.2d at 304.

Yet even if Ms. Franklin intended to make a generalized negligence claim with reference to internal policies, she has not "come forward with specific facts demonstrating there is a genuine issue in dispute."  *Chao*, 285 F.3d at 424.  Ms. Franklin contends only that Mr. Rogers and Captain Culbertson negligently failed to enforce rules, which caused her sexual assault.  [R. 66 at 28-30.]  Despite exceeding the Court's normal briefing page limit, Ms. Franklin's negligence argument does not cite the specific rules involved or how Mr. Rogers or Captain

20

Culbertson broke them.  In addition, Ms. Franklin does not explain how any violation of these rules proximately or factually caused Mr. Price to sexually assault Ms. Franklin.  It would be "inappropriate for the court to abandon its position of neutrality" and develop her legal arguments.  *Guarino*, 980 F.2d at 406.  Therefore, Mr. Rogers and Captain Culbertson have established an absence of evidence to support the nonmovant's case and are entitled to summary judgment on the negligence claim.

## C

After granting summary judgment for the Defendants and for Ms. Franklin on her constitutional claim against Mr. Price, all that remains are Ms. Franklin's state-law battery and negligence claims against Mr. Price.  These state claims are better left for the state court to decide.  Thus, the claims will be dismissed without prejudice.

Section 1367 grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that form the same case or controversy as the claims over which it has federal question or diversity jurisdiction.  *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010).  When determining whether to retain jurisdiction over state-law claims, a district court should weigh factors including the "values of judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

When all federal claims are dismissed before trial, "the balance of considerations usually will point to dismissing the state law claims."  *Gamel*, 625 F.3d at 952; *see also* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction").  However, a court should retain supplemental jurisdiction in some circumstances even if all underlying federal claims have been dismissed.  *See, e.g.*, *Harper v. AutoAlliance Intern, Inc.*, 392 F.3d 195 (6th Cir. 2004)

(holding that the court properly exercised jurisdiction over remaining state claims where the plaintiff had engaged in forum manipulation, the parties had completed discovery, and the defendants' summary-judgment motions were ripe for decision).

In addition, a district court may decline to exercise supplemental jurisdiction over a state-law claim if the claim "raises a novel or complex issue of state law."  28 U.S.C. § 1367(c)(1). Indeed, where "both parties have made plausible arguments in favor of their respective positions" on a novel issue of state law, the issue "is therefore better left for the state courts to decide."  *Weser v. Goodson*, 965 F.3d 507, 519 (6th Cir. 2020) (vacating a district-court judgment as to state-law claims and remanding with instructions to decline supplemental jurisdiction where state courts had never squarely addressed the issue).

Here, declining supplemental jurisdiction over Ms. Franklin's battery claim against Mr. Price is proper.  Kentucky law defines civil battery as an intentional and unlawful touching of the person of another.  *See Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000).  In addition, lack of consent is an essential element of a battery claim for sexual assault.  *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 726 (Ky. 2009).  However, the consent "must be knowingly and intelligently given and may not be the result of incompetence."  *Id.* (cleaned up) (quoting 6A C.J.S., Assault § 22 (2008)).

Ms. Franklin alleges that Mr. Price committed battery by having sexual contact with her. [R. 54-1 at 12.]  She contends that, as an inmate, she was incapable of consenting to sexual contact with a guard.  *Id.*  But the parties do not cite, and the Court is not aware of, any source that directly addresses whether an inmate can consent to sexual activity with a guard under Kentucky tort law.  *See id.* at 11-12; [R. 64 at 8-10;] *Hale v. Boyle Cnty.*, 2020 U.S. Dist. LEXIS 173616, at *47 (W.D. Ky. Sep. 22, 2020) (noting that "no Kentucky source" addresses whether

an inmate can consent to sexual activity with a guard under Kentucky tort or negligence law) (overruled on other grounds).

Ms. Franklin contends that KRS 510.020(3)—a criminal statute providing that a person under the custody of a local agency cannot consent with an actor employed by that agency—establishes lack of consent for her battery claim. [R. 54-1 at 12.] But, as Mr. Price points out, the statute explicitly applies only to criminal offenses, which Ms. Franklin's battery claim is not. *See* KRS 510.020(1)-(3) (defining consent for "every offense defined in this chapter"); *Phillips v. Bird*, 2003 U.S. Dist. LEXIS 22418, at *17-18 (D. Del. Dec. 1, 2003) ("That an inmate cannot assert consent as a defense to the crime articulated in 11 Del. C. § 1259 does not mean that an inmate can avoid the consequences of consent in a civil suit."). Though Kentucky's highest court has twice referenced criminal statutes when deciding whether a person can consent to a civil battery, it has never decided that a criminal statute was determinative. *See Ten Broeck Dupont*, 283 S.W.3d at 726; *Koch v. Stone*, 332 S.W.2d 529, 532 (Ky. 1960).

This Order resolves all federal claims in this action. Thus, "the balance of considerations usually will point to dismissing the state law claims." *Gamel*, 625 F.3d at 952. Factors weighing in favor of retaining supplemental jurisdiction are that this case has been on the Court's docket since July 2019, discovery is over, and the case is at the summary judgment stage. [R. 1.] Yet these are outweighed by the comity and fairness factors that weigh heavily toward declining supplemental jurisdiction because the parties should be afforded the opportunity to address an issue of first impression of Kentucky law in a Kentucky court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). In addition, under 28 U.S.C. § 1367(c)(1), Ms. Franklin's battery

claim is better left for a Kentucky court to decide because it raises a novel issue of Kentucky law and "both parties have made plausible arguments in favor of their respective positions." *Weser*, 965 F.3d at 519.

Therefore, the Court declines to exercise supplemental jurisdiction over Ms. Franklin's state-law battery claim against Mr. Price.  This leaves only Ms. Franklin's state negligence claim against Mr. Price.  And because the negligence claim closely relates to her battery claim, the "values of judicial economy, convenience, fairness, and comity" all weigh in favor of likewise declining to exercise supplemental jurisdiction over the negligence claim. *Carnegie-Mellon Univ.*, 484 U.S. at 350.

### III

Upon review, the Court finds that Ms. Franklin and the Defendants' motions for summary judgment both have merit. However, Ms. Franklin's state-law battery and negligence claims are better left to be adjudicated by a Kentucky court.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.  Plaintiff Ashley Franklin's Motion for Summary Judgment **[R. 54]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.   Summary judgment as to Mr. Price is **GRANTED** as to **Count One**

    b.   Summary judgment as to Mr. Price is **DENIED** as to **Count Three**;

2.  Plaintiff Ashley Franklin's remaining claims against Defendant Brandon Price are **DISMISSED WITHOUT PREJUDICE**;

3.  Plaintiff Ashley Franklin's Motion for Leave to File Excess Pages **[R. 67]** is **GRANTED**;

4.  **Count One** against Defendant Rick Rogers is considered **ABANDONED**;

5.  Defendants Franklin County, Rick Rogers, and Wes Culbertson's Motion for Summary Judgment **[R. 57]** is **GRANTED**;

6.  Judgment in favor of Plaintiff on Count One against Defendant Brandon Price and in favor of Defendants Franklin County, Rick Rogers, and Wes Culbertson will be entered promptly.


This the 10th day of February, 2023.


Gregory F. Van Tatenhove
United States District Judge